IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs September 28, 2010

**DANIEL WADE WILSON v. STATE OF TENNESSEE**

**Direct Appeal from the Criminal Court for Sullivan County**
**No. C55,388     Robert H. Montgomery, Jr., Judge**

---

**No. E2010-00451-CCA-R3-PC - Filed September 7, 2011**

---

The petitioner, Daniel Wade Wilson, appeals the Sullivan County Criminal Court's denial of his petition for post-conviction relief from his convictions for first degree felony murder, second degree murder, and especially aggravated robbery and resulting effective sentence of life in confinement.  On appeal, he contends that he is entitled to post-conviction relief because his confession to police was coerced and because he received the ineffective assistance of counsel.  The State argues that the post-conviction court erred by determining that the one-year statute of limitations for filing the post-conviction petition was tolled and, therefore, that the petition is time-barred.  Based upon the record and the parties' briefs, we agree with the State that the statute of limitations was not tolled in this case because trial counsel did not mislead the petitioner regarding the status of his appeal to the Tennessee Supreme Court.  Therefore, the appeal is dismissed.

**Tenn. R. App. P. 3 Appeal as of Right; Appeal Dismissed.**

NORMA MCGEE OGLE, J., delivered the opinion of the Court, in which JAMES CURWOOD WITT, JR., and CAMILLE R. MCMULLEN, JJ., joined.

Robert Payne Cave, Jr., Johnson City, Tennessee, for the appellant, Daniel Wade Wilson.

Robert E. Cooper, Jr., Attorney General and Reporter; David H. Findley, Assistant Attorney General; H. Greeley Wells, District Attorney General; and Barry Staubus, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**I.  Factual Background**

In the early morning hours of April 5, 1999, Kim Bolling drove her boyfriend, David

Vestal; the petitioner; and Jared Christein to Steele's Creek Park in order for the men to retrieve some marijuana. State v. Daniel Wade Wilson, No. E2000-01885-CCA-R3-CD, 2001 Tenn. Crim. App. LEXIS 587, at **2-5 (Knoxville, Aug. 2, 2001), perm. to appeal denied, (Tenn. 2002). While Bolling waited in the car, the three men walked along a path into the park. Id. at *5. Later that morning, a jogger discovered blood on a gravel trail in the park and Vestal's body lying near a creek bank. Id. at *7. During the police's investigation of the victim's death, the petitioner went to the detective's bureau for questioning. Id. at *13. At first, the petitioner denied being involved. Id. at *14. However, he later gave a statement to Lieutenant Jerry Smeltzer in which he claimed that the victim had attacked him while they were walking in the park. Id. at *5. The petitioner stabbed the victim repeatedly, and Christein took the victim's wallet. Id. at **5-6. At trial, the petitioner argued that he stabbed the victim in self-defense. Id. at *29. The jury convicted him of first degree felony murder, second degree murder as a lesser-included offense of first degree premeditated murder, and especially aggravated robbery. Id. at *1. The trial court merged the second degree murder conviction into the felony murder conviction and sentenced the petitioner to consecutive sentences of life for the murder conviction and twenty-three years for the especially aggravated robbery conviction. Id. at **1-2.

On direct appeal, this court concluded that the trial court erred by failing to charge certain lesser-included offenses for felony murder and especially aggravated robbery. Id. at **37-38, 43. This court reversed those convictions, remanded the case to the trial court for a new trial as to those charges, and ordered that the trial court sentence the petitioner for the second degree murder conviction. Id. at *54. The petitioner was represented by different counsel at his second trial, and a jury again convicted him of first degree felony murder and especially aggravated robbery. State v. Daniel Wade Wilson, No. E2003-02070-CCA-R3-CD, 2004 Tenn. Crim. App. LEXIS 467, at *1 (Knoxville, May 26, 2004). The trial court sentenced him to consecutive sentences of life and twenty-three years, respectively. Id. This court affirmed the petitioner's convictions and sentences. Id. at *24. The petitioner did not file an application for permission to appeal to the Tennessee Supreme Court.

On July 7, 2008, the petitioner filed a pro se petition for post-conviction relief, raising various issues, including that his convictions were based upon a coerced confession and that he received the ineffective assistance of counsel at his second trial. The petitioner also alleged in the petition, "The only reason I have not filed my petition before now, is because I was under the impression that I still had an appeal pending in the Supreme Court of Tennessee." The post-conviction court appointed counsel, and counsel filed a motion to toll the one-year statute of limitations for filing a petition for post-conviction relief. A memorandum in support of the motion argued that tolling was required because the petitioner was denied his right to appeal this court's May 26, 2004 decision to the supreme court

pursuant to Rule 11, Tennessee Rules of Appellate Procedure, and because counsel for the petitioner's second trial never filed a motion to withdraw pursuant to Rule 14, Tennessee Supreme Court Rules. The post-conviction court ordered that an evidentiary hearing be held in order for the court to determine whether due process tolled the statute of limitations. At the conclusion of the hearing, the court concluded that the statute of limitations should be tolled and scheduled a hearing on the merits of the petition. Relevant to this appeal, counsel filed an amended petition for post-conviction relief, arguing that the petitioner's statement to Lieutenant Jerry Smeltzer was coerced, unknowing, and involuntary because the petitioner was under the influence of drugs and alcohol when he gave the statement. The petitioner also claimed that he received the ineffective assistance of counsel at his second trial and on appeal because (1) counsel failed to file motions such as a motion to suppress his statement, (2) counsel failed to interview witnesses, including Bobby Lingerfelt and Kim Bolling, and (3) counsel's failure to file a motion to withdraw denied the petitioner the right to appeal this court's May 26, 2004 decision to the Tennessee Supreme Court.

At the evidentiary hearing, Verna Sue Wheeler testified that she was the petitioner's cousin and lived in the same trailer park as the petitioner in April 1999. At that time, the petitioner had serious problems with alcohol and marijuana. About 3:00 p.m. on April 4, 1999, Wheeler drove the petitioner, Brandon Alford, and Jared Christein to Big Creek. She said the petitioner was intoxicated, that she left the men at Big Creek, and that she did not see the petitioner again before he talked with the police about the victim's death. On cross-examination, Wheeler said that she testified at the petitioner's second trial and that trial counsel did not interview her before she testified. However, upon being questioned by the post-conviction court, Wheeler testified that she spoke with trial counsel briefly about the petitioner's case before she testified at his second trial.

Bobby Lee Lingerfelt, Jr., testified that he was the petitioner's second cousin and lived with the petitioner in April 1999. He worked with the petitioner at Peerless Woodwork, and the petitioner used alcohol and drugs almost every day. Lingerfelt said that on the morning of April 5, 1999, the petitioner came to work about 10:00 or 11:00 a.m. and that "you could tell he was still on drugs." Lingerfelt testified at the petitioner's first trial but did not know the petitioner had a second trial. On cross-examination, Lingerfelt acknowledged that he testified at the petitioner's first trial about the petitioner's alcohol use but that he did not mention the petitioner's drug use. He said he did not mention the petitioner's drug use because "nobody never did ask me."

The petitioner testified that he met with counsel three or four times before his second trial and that they did not discuss any defenses other than self-defense. He said that Kim Bolling "was the only person not intoxicated in the car that night" and that he told counsel he wanted Bolling to testify. However, counsel refused to call her as a witness. He said that

-3-

on April 4, 1999, he began drinking alcohol about 8:00 or 9:00 a.m. and began smoking marijuana about noon. He continued to drink and smoke all day until he went to bed about 4:00 a.m. on April 5. When he woke on the morning of April 5, he took two or three Valium pills and smoked marijuana. He went to work about noon, and the police arrived at his workplace about 3:00 p.m. The petitioner went with them to the police department. The police put him in a small office, had him sign a waiver of rights form, and asked him questions. The petitioner said that the police never asked if he was under the influence but that "I thought they knew I was high." The petitioner told the police he was not at Steele's Creek Park.

The petitioner testified that after his interview, he went into the bathroom, flushed marijuana that had been in his pocket down the toilet, and swallowed about seventeen Valium pills. Then he went outside and smoked cigarettes. About 6:00 p.m., the police officers put him in another room for another interview. He said he blacked out and did not remember giving a statement to Lieutenant Smeltzer. The police woke him and told him he was being charged with the crimes. He said that for his first trial, his attorney told him that "it may be better to keep the statement in there." However, the petitioner did not remember counsel's strategy regarding the statement at his second trial. He said that if his statement had been suppressed, he would not have been convicted of especially aggravated robbery because "I didn't rob nobody. I didn't plan to rob nobody."

On cross-examination, the petitioner acknowledged that he never testified during his first trial that he did not remember giving his statement to police or that his statement was coerced. He said he lied about his statement during his first trial.

Counsel testified for the State that he had been practicing law for almost twenty-eight years and was appointed to represent the petitioner for the petitioner's second trial. Although counsel did not practice criminal law exclusively, he had tried various types of criminal cases, including first degree murder cases, before the petitioner's trial. Counsel met with the petitioner at least seven times before trial and met with him for several hours on several occasions. Counsel said that the attorney who had represented the petitioner during the first trial had filed numerous motions and that those motions "had been dealt with." Counsel discussed the motions with the petitioner and did not foresee the need to file any additional motions. Counsel said he did not file a motion to suppress the petitioner's statement because the petitioner never told counsel that the petitioner blacked out, that the petitioner was under the influence of intoxicants, or that the statement was coerced. Also, while some parts of the statement hurt the petitioner's case, some parts were beneficial to the petitioner's self-defense claim. Counsel said that if the petitioner's statement had been suppressed, the petitioner would have had to testify in order to raise self-defense. However, the petitioner also could have been impeached with his prior convictions. Brandon Alford testified at trial

about a plan to rob the victim. Therefore, even if the petitioner's statement had been suppressed, evidence existed to convict the petitioner of especially aggravated robbery.

Counsel testified that he talked with the petitioner about witnesses and made a witness list. Counsel could not find Kim Bolling but thought her testimony would be damaging to the petitioner's case because the victim was her boyfriend. Bobby Lingerfelt had testified at the petitioner's first trial. For some reason, the petitioner wanted Lingerfelt to testify at the second trial that the petitioner was wearing braces on his teeth when the police questioned him. However, Lingerfelt had a criminal record, and counsel decided not to call him as a witness. Another witness testified at the second trial about the petitioner's braces. Counsel said that he raised two issues on appeal to this court, sufficiency of the evidence and consecutive sentencing, and that he "did not anticipate any novel issues or something that would catch the eye of the Supreme Court." After this court filed its opinion affirming the petitioner's convictions and sentences, counsel did not file an application for permission to appeal to our supreme court or a motion to withdraw.

On cross-examination, counsel testified that the petitioner never told him that the petitioner went into the bathroom at the police department and consumed pills or that the statement was coerced. The petitioner did not want to testify at his second trial, and the defense needed his statement in order to assert a self-defense claim.

Jack Necessary testified that he was a detective with the Bristol Police Department in April 1999. He and other officers found the petitioner on the afternoon of April 5, 1999, and asked the petitioner to come to the police department. The petitioner agreed. Another officer searched the petitioner before the officers put the petitioner into a patrol car, and the officer did not find any drugs on him. The officer transported the petitioner to the police department, and Necessary interviewed the petitioner in Necessary's office. He acknowledged that someone was with the petitioner the entire time and that the petitioner was never allowed to go outside without being accompanied by an officer.

On cross-examination, Necessary acknowledged that he testified at both of the petitioner's trials but that he did not testify about the petitioner's having been searched before being transported to the police department. He acknowledged that he did not ask the petitioner before the interview if the petitioner was under the influence. He acknowledged that according to testimony at the petitioner's second trial, a screwdriver was in the petitioner's back pocket when the petitioner arrived at the police department.

Lieutenant Jerry Smeltzer of the Bristol Police Department testified that in April 1999, he was a detective for the department and took the petitioner's statement on April 5. The petitioner did not appear to be under the influence of drugs or alcohol and seemed to

understand what was going on. Lieutenant Smeltzer said that although he did not escort the petitioner to the bathroom, it was department policy for an officer to accompany a suspect to the bathroom or to smoke.

On cross-examination, Lieutenant Smeltzer acknowledged that the petitioner talked with Jack Necessary before the petitioner gave his statement to Lieutenant Smeltzer. Lieutenant Smeltzer wrote the petitioner's statement for him and tried to use the petitioner's exact words. He read the statement to the petitioner but did not give it to the petitioner to read. He acknowledged that he was not with the petitioner the entire time the petitioner was at the police department and that the screwdriver in the petitioner's pocket should have been discovered before the petitioner was transported to the department. Upon being questioned by the post-conviction court, Lieutenant Smeltzer testified that the petitioner waived his rights with Jack Necessary at 4:13 p.m. but did not give the statement about the crimes until 7:15 that evening. Lieutenant Smeltzer said the petitioner would have been with Jack Necessary during that time.

Regarding the petitioner's statement, the post-conviction court accredited Necessary's and Lieutenant Smeltzer's testimony that the petitioner was not intoxicated when he gave his statement. Given that the petitioner acknowledged lying at his first trial about the circumstances in which he gave his statement, the court found the petitioner not credible. The court also stated that the issue had been waived because the petitioner could have raised it during his first direct appeal. Regarding the petitioner's claim that he received the ineffective assistance of counsel because counsel failed to file motions, including a motion to suppress his statement, the post-conviction court accredited counsel, who testified that the petitioner never claimed he was impaired when he gave the statement and that the statement was an important defense strategy. As to the petitioner's claim that counsel should have interviewed Lingerfelt and Bolling before trial, the court again accredited counsel, who testified that he could not locate Bolling and that he did not think Lingerfelt and Bolling would be favorable witnesses. Finally, as to the petitioner's claim that counsel's failure to withdraw from his case denied him the right to appeal this court's May 26, 2004 decision to our supreme court, the court accredited counsel's testimony from the tolling hearing that he and the petitioner discussed an appeal to the supreme court and decided not to pursue an appeal. However, the court determined that even if counsel's failure to file a motion to withdraw resulted in deficient performance, the petitioner was not prejudiced by the deficiency because counsel knew of no basis for an appeal to the supreme court and because the petitioner failed to cite any issues that would have warranted the supreme court's granting an application for permission to appeal.

## II. Analysis

## A. Statute of Limitations

The State claims that the post-conviction court erred by determining that the one-year statute of limitations for filing the petition for post-conviction relief should be tolled in this case because the court specifically accredited trial counsel's testimony that he talked with the petitioner and that they agreed not to appeal this court's May 26, 2004 decision to the Tennessee Supreme Court. The petitioner contends that counsel's failure to file a motion to withdraw resulted in the petitioner's missing the opportunity to appeal to the supreme court. We agree with the State.

At the hearing to determine whether the one-year statute of limitations was tolled, Gracie Lee Oliver, the petitioner's mother, acknowledged that after the petitioner's second trial, counsel appealed the petitioner's case to this court. However, she never learned about this court's decision. She said that she attempted to get in touch with trial counsel and telephoned him "a lot of times" but that he never returned her calls. She said that she also faxed a letter to counsel on July 12, 2007, telling him to call her or contact the petitioner, and that she wrote the petitioner's address on the letter.[1] She said that the petitioner never told her he did not want to continue his appeal and that counsel never withdrew from the petitioner's case.

On cross-examination, Oliver testified that she picked up the petitioner's case file from counsel's office. However, she did not remember when she picked up the file. She acknowledged that nothing on the faxed letter indicated that it had been sent to counsel or that counsel had received it.

Virginia Dianne Hammonds, the petitioner's sister, testified that the petitioner contacted her two to three times per week, asking if she had heard anything about his appeal. She always told him no. On cross-examination, Hammonds testified that she spoke with counsel on the telephone one time in April or May 2005. Counsel told Hammonds that he could not discuss the petitioner's case with her.

The petitioner testified that counsel sent him a letter after this court filed its opinion affirming his convictions. In the June 24, 2004 letter, which the petitioner introduced into evidence, counsel stated, "Please find enclosed herewith the opinion rendered by the Criminal Appeals Court at Knoxville denying the relief sought and affirming the judgments of the trial court." Nothing in the letter indicated counsel planned to withdraw or file an

---

[1]A copy of the faxed letter was introduced into evidence at the hearing. The handwritten letter actually states, "Please get in touch with me with this information. Thanks." It is signed, "Gracie Oliver." The petitioner's address is not on the letter.

appeal to the supreme court. The petitioner stated that counsel also never talked with him about withdrawing from or appealing his case. At some point, the petitioner mailed a letter to the trial court clerk, requesting information about the status of his case, and the clerk advised the petitioner to contact the court of criminal appeals. In a letter dated March 11, 2008, a deputy clerk for the Tennessee Court of Criminal Appeals at Knoxville informed the petitioner that no Rule 11 application for permission to appeal to the Tennessee Supreme Court had been filed. The petitioner stated that he immediately began preparing to file a petition for post-conviction relief.

The petitioner testified that he did not contact the clerks for the trial court and the court of criminal appeals earlier because "I thought that it took a while to receive the decision on your application for appeal. I didn't know that it was something that happened quick because I thought it took two or three years so I was just waiting on a response." He said that after he received counsel's June 24, 2004 letter, he mailed a letter to counsel, requesting items from his file such as copies of his trial transcripts. He said that his mother picked up the requested items but that he thought counsel was still representing him. On August 23, 2005, the petitioner began telephoning counsel's office. He introduced into evidence a prison call log, showing that he called counsel thirty-five times between August 23, 2005, and March 27, 2008.[2] However, the petitioner never got to speak with counsel. The petitioner said he first learned counsel had not filed an application for permission to appeal to the supreme court when he received the deputy clerk's March 11, 2008 letter.

On cross-examination, the petitioner testified that he thought he last spoke with counsel at his sentencing hearing. He said that after he received counsel's June 24, 2004 letter, he sent a letter to counsel, telling counsel that "after you file my permission to appeal make sure that I know when it comes back so that I know when my time limit starts for filing for Post-Conviction Relief." However, he did not have a copy of the letter. He said that he continued to mail letters to counsel every couple of months but that he did not have copies of the letters.

Trial counsel testified that after this court filed its opinion affirming the petitioner's convictions and sentences for first degree felony murder and especially aggravated robbery, he spoke with the petitioner and the petitioner's mother. Counsel said he talked with them about "the likelihood of whether or not anything would change on appeal. I think we reached a consensus that we'd done the best that we had during the trial and in the appellate process and therefore it would be totally unlikely for any additional relief from the Supreme Court." He said those conversations took place between May 26, 2004, when this court filed its

---

[2]According to the log, the petitioner telephoned counsel's office three times in August 2005, twice in January 2006, and thirty times from January 2008 to March 2008.

opinion denying relief, and June 24, 2004, when counsel mailed his letter to the petitioner. He said the petitioner did not tell him to pursue the case and that the petitioner's mother picked up the petitioner's file from counsel's office. Counsel said he thought the petitioner's case was over, and, therefore, did not think there was a reason to file a motion to withdraw. He said the only letters he remembered receiving from the petitioner were a letter the petitioner mailed to counsel before the petitioner's sentencing hearing and a certified letter counsel received in 2008. He said that if he had received a letter from the petitioner asking about the petitioner's appeal to the supreme court, he would have put the letter in counsel's file. He said he did not file a Rule 11 application for permission to appeal because "we'd reached a consensus. We had agreed that it would not be overturned, that it would not be ---- that it would be futile to do so." He acknowledged that his office received collect telephone calls from the petitioner but said that his office's policy was not to accept collect calls.

On cross-examination, counsel acknowledged that he did not file a motion to withdraw pursuant to Tennessee Supreme Court Rule 14. He said that in "retrospect," he should have told the petitioner in the June 24, 2004 letter that he was going to withdraw from the case.

The post-conviction court specifically accredited counsel's testimony but determined that the statute of limitations was tolled, stating as follows:

> I accredit what [trial counsel] says . . . . You know, I find what you say very credible, the fact that you had conversation with him and basically discussed whether or not there was going to be an appeal or whether or not it would be futile to the Supreme Court or an application would be futile. So in that sense I believe everything that you say. The problem that I have is, is that I've been around long enough to know that, you know, when someone is incarcerated and they're incarcerated serving a life sentence lots of things happen while they're back there and certainly what happens during the time that they're there, sometimes for whatever reason, changes their opinions, people have lots of different things to think about. . . . But in my opinion, based upon the nature of the charges that he's faced with, and the sentence that he's serving, that really ---- I think due process because that Rule 14 was not complied with, and there's no ---- anything in writing to reflect that he knew or understood, either from him or from you, makes it more difficult for me to say that those conversations that you had with him kind of override Rule 14. And so in my opinion I'm going [to]

allow the late filing of the Petition for Post-Conviction relief.

The State contends that the post-conviction court erred by concluding that the statute of limitations should be tolled because counsel's failure to file a motion to withdraw is not dispositive on the issue. We agree with the State.

Generally, "[r]elief under [the Post-Conviction Procedure Act] shall be granted when the conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." Tenn. Code Ann. § 40-30-103. However, to obtain relief, the post-conviction petition must be filed within one year of the final action of the highest state appellate court to which the petitioner appealed, or, in the event no appeal was taken, within one year of the date the judgment(s) of conviction became final. Tenn. Code Ann. § 40-30-102(a); see also Williams v. State, 44 S.W.3d 464, 468 (Tenn. 2001). The statute emphasizes that "[t]ime is of the essence of the right to file a petition for post-conviction relief" and that "the one-year limitations period is an element of the right to file such an action and is a condition upon its exercise." Tenn. Code Ann. § 40-30-102(a).

Clearly, the petitioner filed his post-conviction petition well-outside the one-year statute of limitations. However, our supreme court has held that the statute of limitations may be tolled in cases where its strict application would deny the petitioner "a reasonable opportunity to assert a claim in a meaningful time and manner." Williams, 44 S.W.3d at 468 (quoting Seals v. State, 23 S.W.3d 272, 279 (Tenn. 2000)). In Williams, the petitioner's attorney failed to take the proper steps to withdraw timely and inform Williams of his right to appeal. 44 S.W.3d at 465-67. Subsequently, the post-conviction court dismissed his petition for post-conviction relief as untimely. Id. On appeal to our supreme court, the court reasoned that "an attorney's misrepresentation, either attributable to deception or other misconduct," is "beyond a defendant's control." Id. at 469. Therefore, if "a defendant erroneously believes that counsel is continuing to represent him . . . then the defendant is essentially precluded from pursuing certain remedies independently." Id. As the court explained, "[t]he question, then, is whether [Williams] was, in fact, misled to believe that counsel was continuing the appeals process, thereby requiring the tolling of the limitations period. Id. at 471. The supreme court held that Williams was entitled to a hearing to determine whether due process required that the statute of limitations be tolled. Id. at 468. Recently, in Charles Ray Powell v. State, No. M2009-01618-CCA-R3-PC, 2010 Tenn. Crim. App. LEXIS 990, at **6-7 (Nashville, Nov. 23, 2010), perm. to appeal denied, (Tenn. 2011), a panel of this court, relying on Williams, explained,

> The Petitioner's allegations simply reflect that his retained
> counsel failed to seek supreme court review of this court's

-10-

decision or to withdraw as counsel with notice to Petitioner of his right to seek supreme court review in a timely manner. Counsel's inaction, however, does not justify a tolling of the statute of limitations for a period of nine years. If Petitioner had asserted that counsel provided assurances to him during those nine years that his case was on appeal, then we believe an evidentiary hearing might be warranted. Absent any allegation to justify Petitioner's years of inaction, however, we do not believe an evidentiary hearing is warranted.

Initially, we question whether the petitioner was entitled to a hearing on whether the statute of limitations should be tolled because the petitioner did not allege in his motion to toll the post-conviction statute of limitations or in his memorandum in support of the motion that he had been misled regarding counsel's filing an application for permission to appeal to our supreme court. See Christopher L. Williams v. State, No. M2007-00386-CCA-R3-PC, 2008 Tenn. Crim. App. LEXIS 153, at *5 (Nashville, Feb. 21, 2008) (holding that an evidentiary hearing was not required because "[t]he petition alleges that the petitioner was never advised that counsel was no longer pursuing the appellate process on his behalf and that he could file an application for appeal with the supreme court. . . . He has not alleged, however, that counsel ever misrepresented anything to him."), perm. to appeal denied, (Tenn. 2008). In any event, the post-conviction court afforded the petitioner a hearing in this case. Although the petitioner claimed at the hearing that he thought his appeal to the supreme court was pending, the post-conviction court specifically accredited counsel's testimony that he spoke with the petitioner and that he and the petitioner agreed they would not seek further appellate review. Nevertheless, the post-conviction court concluded that counsel's conversations with the petitioner did not override his failure to file a motion to withdraw. Granted, counsel should have filed a motion to withdraw. See Tenn. Sup. Ct. R. 14. However, because the post-conviction court concluded that trial counsel did not mislead the petitioner into believing that counsel was continuing the appeals process, due process did not require tolling the statute of limitations, and the post-conviction court should have dismissed the petition as untimely. Despite this conclusion, we will briefly address the petitioner's post-conviction claims in the event of further appellate review.

## B. Petition for Post-Conviction Relief

The petitioner maintains that he is entitled to post-conviction relief because his statement to Lieutenant Smeltzer was coerced. He also claims that he received the ineffective assistance of counsel at his second trial and on appeal because (1) counsel failed to file motions, including a motion to suppress his statement, (2) counsel failed to interview witnesses, including Bobby Lingerfelt and Kim Bolling, and (3) counsel's failure to file a

-11-

motion to withdraw denied him the right to appeal this court's May 26, 2004 decision to the Tennessee Supreme Court.

To be successful in a claim for post-conviction relief, a petitioner must prove all factual allegations contained in his post-conviction petition by clear and convincing evidence. See Tenn. Code Ann. § 40-30-110(f). "'Clear and convincing evidence means evidence in which there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence.'" State v. Holder, 15 S.W.3d 905, 911 (Tenn. Crim. App. 1999) (quoting Hodges v. S.C. Toof & Co., 833 S.W.2d 896, 901 n.3 (Tenn. 1992)). Issues regarding the credibility of witnesses, the weight and value to be accorded their testimony, and the factual questions raised by the evidence adduced at trial are to be resolved by the post-conviction court as the trier of fact. See Henley v. State, 960 S.W.2d 572, 579 (Tenn. 1997). Therefore, the post-conviction court's findings of fact are entitled to substantial deference on appeal unless the evidence preponderates against those findings. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001).

A claim of ineffective assistance of counsel is a mixed question of law and fact. See State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999). We will review the post-conviction court's findings of fact de novo with a presumption that those findings are correct. See Fields, 40 S.W.3d at 458. However, we will review the post-conviction court's conclusions of law purely de novo. Id.

When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, "the petitioner bears the burden of proving both that counsel's performance was deficient and that the deficiency prejudiced the defense." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)). To establish deficient performance, the petitioner must show that counsel's performance was below "the range of competence demanded of attorneys in criminal cases." Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). To establish prejudice, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. Further,

> [b]ecause a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component.

-12-

<u>Goad</u>, 938 S.W.2d at 370 (citing <u>Strickland</u>, 466 U.S. at 697).

Regarding the petitioner's claim that his confession was coerced, the post-conviction court accredited the officers' testimony that the petitioner did not appear to be impaired when he gave his statement and found that the petitioner was not credible when he claimed he was under the influence of drugs and alcohol. As for the petitioner's argument that he received the ineffective assistance of counsel because counsel failed to file motions and failed to file a motion to suppress his statement, the court accredited counsel's testimony that the petitioner never claimed his confession was coerced and that the confession was needed to support the petitioner's self-defense claim. We note that, other than the motion to suppress, the petitioner has not explained what other motions counsel should have filed. Regarding the petitioner's claim that counsel failed to interview witnesses and should have had Lingerfelt and Bolling testify at trial, the court again accredited counsel's testimony that he could not find Bolling and that he did not think Bolling and Lingerfelt would be favorable witnesses. "Allegations of ineffective assistance of counsel relating to matters of trial strategy or tactics do not provide a basis for post-conviction relief" as long as counsel's "'choices are informed ones based upon adequate preparation.'" <u>House v. State</u>, 44 S.W.3d 508, 515 (Tenn. 2001) (quoting <u>Goad v. State</u>, 938 S.W.2d 363, 369 (Tenn. 1996)). The petitioner has failed to show that counsel's tactical choices in this case were unreasonable.

Finally, the petitioner contends that he received the ineffective assistance of counsel because counsel's failure to file a motion to withdraw denied him the right to appeal this court's decision to our supreme court. However, the post-conviction court accredited counsel's testimony that he and the petitioner decided not to pursue an appeal to our supreme court. The post-conviction court properly denied the petition for post-conviction relief.

### III.  Conclusion

Based upon the record and the parties' briefs, we conclude that the post-conviction court erred by determining that due process tolled the one-year statute of limitations for filing a petition for post-conviction relief and dismiss the appeal.

_____
NORMA McGEE OGLE, JUDGE